### Baker v. Commonwealth.

May 31, 1949.

Shumate & Shumate for appellant.

A. E. Funk, Attorney General, and John M. Kinnaird, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE HELM—Reversing.

On May 4, 1948, the grand jury of Madison County returned an indictment against Ernest Baker and Odie Sewell, charging them with "operating a place of entertainment without a permit." On May 10, 1948, a trial jury found the defendant, Ernest Baker, guilty and fixed his punishment at a fine of $200 and 60 days in jail. From the judgment entered on that verdict, appellant has filed motion for an appeal.

Richard Edester, deputy sheriff, says appellant has a "place of business" near Berea in Madison County, outside the corporate limits of any city. Baker told Edester he operated the place. Edester had stopped there a few times. "That place there * * * is a great big, long building * * *. The front is a grocery store. * * * The center is a kitchen. * * * The back room is a big room * * * probably 20 x 20." Appellant had partitioned off the front part of the building for a grocery, the back part of the building he uses as living quarters.

At the time of a break-in investigation, Buell Kincaid of Richmond was in charge of the place. Baker was in Illinois. When asked if Buell Kincaid stays with Odie Sewell, the witness replied, "I don't know." When Edester was asked as an officer of the law if he ever saw anything out of the way there, he answered, "No, sir. I didn't." Edester found beds, pinball machines and a Victrola in the back room.

On Thanksgiving, 1947, Edester was in the back part of the building; "They had a pretty well set table. * * * Had turkey and old ham. * * * There was a bunch of people there that I understood to be some of Baker's kinfolks from Illinois."

Clint Hensley, a member of the police force at Berea, testified that the only time he was at the Baker place, he went there with a search warrant to search the place. That was about three weeks before he testified. Baker had "a grocery store, a lunch counter, a davenport and a nickelodeon in the front room of the building, the middle room was a kitchen and in the back room were two tables about four feet square, two or three pinball machines, a nickelodeon, an old refrigerator locked, a bed and a cabinet set up on legs about six feet long by six feet high locked. The nickelodeon and pinball machines had been broken open. This was after the robbery. The nickelodeon in the front room had been broken open." Baker told him that the machines had been robbed. The back part of the building was a kitchen and bedroom, suitable for living quarters.

W. E. Davis, county policeman, testified the front room was a grocery. In the second room, used as a kitchen, was an icebox and a bed. In the back room, about 20 x 20, was an old refrigerator locked, a cabinet, a bed and a music box that seemed to have been prized open. Baker said, "To think, they took the money out of it," referring to the thieves. The witness stopped by a few times but the grocery store door would be locked until "I served notice on them they couldn't lock an officer out. A crowd would be there. There were no windows so you could see past the grocery store." The witness was just patrolling because of "what I had seen going in and coming out of there; * * * because lots of complaints have been laid in about it." He had been there several nights when several automobiles were on the outside and he couldn't get in because the door was locked. He said, "We waited until a man went in and we went in with this man. When that happened Mr. Baker walked out and talked with us. Several men walked by us. When I came out all the cars were gone but two. * * * One time I was out there several automobiles were parked out front. I knew two or three of the automobiles. Since he has been leaving the door unlocked, there is a man at their car(s)." When asked to state what he found in the back room when he searched the place under the search warrant, Davis said, "In the back room we found a small amount of whiskey and beer, a crap table, which was not set up, and in the mid-

dle room we found two slot machines. That was in the room called the kitchen. * * * We also found a large slot machine in the back room. We couldn't haul the machine away and Mr. Baker promised to have the machine there when we went back, but when we went back, * * * it was gone. Mr. Baker said he was not responsible for it, that his wife was there." He and his wife were separated about that time. Baker wasn't "tried on that charge. * * * The witness got away. * * * We were not able to locate him. * * * The slot machines were destroyed."

Madison County Judge Matterly testified that he had not issued a permit to Ernest Baker or anyone to operate a place of entertainment at Hickory Plains School House.

Ernest Baker testified that in the building in his possession, which was an abandoned school building, there are three rooms; that he has a grocery store in the front, a kitchen in the middle and in the back a room he uses as a diningroom and bedroom. About the place he has some twenty head of livestock. He stated that he does not invite anyone to dine or drink in the grocery; that the back part of the building is his living quarters; that he does not operate a dance hall there for profit or charge anybody, that he does not permit dancing there. He does have his folks and friends in his private living quarters. He stated that he does not operate a gambling place there; he has a music or "juke" box. Officer Davis advised him that he was not required to have a permit. He does not operate a place where people dance, eat or engage in games, "the only people that eat there are private friends of mine who eat in my private quarters." Pinball machines are in his living quarters, only one is in use. He and other people played it. He has "a license on that pinball machine." He had locked the front or grocery store when he and his friends were in the back. He thought "a man had a right to do that at any time." He didn't "want the front unlocked" when he went in the back. He had a pinball machine and a music box in his grocery when Mr. Davis was there.

Odie Sewell testified that she is a sister of Ernest Baker, lives in Richmond, does not have any interest in the establishment her brother operates near Berea, does

not pay any of the rent, or receive any of the proceeds. Does not have any interest in the pinball machines or slot machines. She visits her brother two or three or more times a month; had been there at night, three, four or five people would be there, and her brother Ernest would be swapping yarns and telling big tales. She took care of the place at various times when her brother would be visiting his folks in Illinois. She would lock the front door when she was in the back. When asked why she locked the door, she said, "They have broken into it two or three times. I didn't want any more thieves getting in." She had played the music box by putting a nickel in it. She had not played or seen the slot machines. She did not know where they were kept. Answered, "You will have to ask Brother Davis about that" when asked if the pinball machines were kept under the bed.

Davis, recalled by the county attorney and asked why he told Baker he didn't need a permit from the county judge, replied, "In the first place I didn't tell him that. He asked me and I told him I didn't know that I would have to consult with you about that."

Appellant urges a reversal and assigns as errors:

(1) The trial court erred in failing to sustain a demurrer to the indictment.

(2) The trial court erred at the conclusion of the evidence in failing to sustain defendant's motion for a directed verdict.

(3) The trial court erred in failing to properly instruct the jury.

In support of the first assignment, appellant cites Commonwealth v. Polley, 298 Ky. 294, 182 S. W. 2d 769. In that case we said the indictment substantially followed the language of KRS 231.020 and "It was essential that the indictment follow substantially the language of both sections or, at least, allege the operation of a place of entertainment such as that defined in KRS 231.010." The demurrer there was properly sustained but that case is not in point here because the indictment here sets out the essential parts of both sections. It is provided by section 126(2) of the Criminal Code of Practice that:

"No indictment for an offense created or defined by statute shall be invalid or insufficient merely for the reason that it fails to negative any exception, excuse or proviso contained in the statute creating or defining the offense."

The trial court gave the usual instructions, except that he did not advise the jury that "place of entertainment," as used in the instructions, to use the words of KRS 231.010, "shall not mean a private home at which bona fide guests are entertained" or "places of business conducted only as * * * grocery stores * * *."

The evidence was sufficient to take this case to the jury. Upon another trial, the court should instruct the jury as above indicated.

Appellant's motion for an appeal is granted.

The judgment of the circuit court is reversed with directions for proceedings not inconsistent with this opinion.